ams

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY WALLS, )<br>)<br>　　　　　**Plaintiff,** )<br>)<br>)<br>vs. )<br>)<br>MIRACORP, INC. d/b/a/ NATIONAL )<br>TRUCK AND TRAILER SERVICES, )<br>et al., )<br>)<br>　　　　　**Defendants.** )<br>_____) | Case No. 09-2112-JAR |

## **MEMORANDUM AND ORDER**

Plaintiff filed this action alleging discrimination on the basis of sex under Title VII of the Civil Rights Act and the Kansas Act Against Discrimination, as well as state law claims of battery. The case proceeded to trial on March 1, 2011 and the jury found in favor of defendant MiraCorp, Inc. ("MiraCorp") on the Title VII claims and in favor of plaintiff Amy Walls on all state law claims against MiraCorp and Lane Goebel. Additionally, the jury found that plaintiff was entitled to punitive damages on her battery claim against MiraCorp.

The Court conducted a hearing on the amount of punitive damages on April 14, 2011. The Court has considered the evidence and argument presented at that hearing, as well as defendant's pre-hearing Motion for Judgment (Doc. 158). The Court has also considered defendant's Motion for Judgment as a Matter of Law Notwithstanding the Verdict (Doc. 160), asking that certain statutory caps be applied to the jury's damages award. As explained more fully below, the Court grants defendant's motion to apply the statutory caps to the jury's damages award and awards plaintiff $2,014,000 in punitive damages against MiraCorp.

**I.     Background**

Among her claims against defendants, plaintiff alleged battery under Kansas law against both defendants MiraCorp and Goebel. Plaintiff's claim against MiraCorp is based on Goebel's actions as an agent or employee of MiraCorp. Plaintiff sought compensatory damages against both defendants and punitive damages against MiraCorp only.[1] Pursuant to K.S.A. § 60-3702(a), the jury was asked in a special interrogatory whether punitive damages should be allowed on plaintiff's battery claim against MiraCorp. The jury was instructed that it may find that punitive damages are allowed if it finds that plaintiff is entitled to actual damages on the battery claim against MiraCorp. The jury was further instructed that an award of punitive damages is allowable if plaintiff proves by clear and convincing evidence that MiraCorp acted in a willful, wanton, or malicious manner in regard to the battery claim. The jury found both defendants liable on the battery claims, assessed each defendant $500,000 in compensatory damages, and found that defendant MiraCorp should be assessed punitive damages.[2]

The Court deferred entry of judgment in this matter pending a hearing on the appropriate amount of punitive damages, which the Court conducted on April 14, 2011. The day before the hearing, defendant filed a "Motion for Judgment as a Matter of Law" and a "Motion for Judgment as a Matter of Law Notwithstanding the Verdict." At the hearing, plaintiff presented evidence on her punitive damages claim and both parties presented oral argument.

**II.    Discussion**

---

[1] On the first day of trial, defendant objected to any request for punitive damages asserted by plaintiff, arguing that this prayer for relief was not preserved in the Pretrial Order. The Court agreed, with the exception of the battery claim against MiraCorp. The Pretrial Order does assert a claim for punitive damages on this claim against MiraCorp only. (Doc. 65 at 12 ¶ f.3.)

[2] (Doc. 155.)

### A. *Punitive Damages*

The Kansas statute provides that "if [punitive] damages are allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded."[3]  "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. . . . A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."[4]

### 1. Authorization and Ratification

Before considering the appropriate amount of punitive damages, defendant argues in its Motion for Judgment as a Matter of Law that the Court is required to make findings with regard to another subsection of the statute, § 60-3702(d):

> (d) In no case shall exemplary or punitive damages be assessed pursuant to this section against:
>
> (1) A principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer; or
> (2) an association, partnership or corporation for the acts of a member, partner or shareholder unless such association, partnership or corporation authorized or ratified the questioned conduct.

Defendant contends that in cases seeking punitive damages against an employer for the acts of its employee, the bifurcated procedure set forth in § 60-3702(a) requires the Court to make a threshold determination that the employer either ratified or authorized the conduct in question.

---

[3] K.S.A. § 60-3702(a).

[4] Fed. R. Civ. P. 52(a), (c).

3

Defendant further argues that the evidence was insufficient at trial to support such a finding.

First, the Court disagrees that the statute requires the Court to conduct post-trial fact finding with regard to § 60-3702(d). Under the statute, the jury is to make the threshold determination about whether punitive damages should be imposed.[5] None of the cases cited by defendant in its motion involve post-trial evidentiary hearings on the amount of punitive damages conducted by a Court and instead deal with pretrial motions asking the court to find that a plaintiff is not entitled to punitive damages as a matter of law.[6] As the Court explained on the record at the punitive damages hearing, in the context of this case, such arguments are properly

---

[5] The jury was instructed that it must decide whether or not Lane Goebel was acting within the scope of his employment in order to determine liability on the battery claim, but it was not instructed on the authorization or ratification requirement in K.S.A. § 60-3702(d). Neither party submitted such a proposed instruction. *See* Fed. R. Civ. P. 51.

At the hearing, defendant requested that the Court file as part of the official docket its draft Proposed Jury Instructions, provided to the parties prior to the informal instruction conference. The Court indicated that it would consider the request. The draft requested by defendant is just that, a draft, and it is not prepared for the purpose of filing. It is not the Court's policy to file this working draft as part of the record. Instead, it is provided to the parties as a courtesy, so that they are not in the position of reviewing the Court's proposed instructions and arguing their remaining objections immediately preceding the formal instruction conference where the objections are preserved for the record. In the Court's experience, this preview of its proposed instructions allows for the parties to further negotiate and often eliminate many of their objections, narrowing the objections that the Court must consider and rule upon at the formal instruction conference. It also allows for the formal instruction conference to be handled more efficiently. Given that it is typically conducted just prior to closing arguments, this allows for the Court to rule and the final instructions to be prepared without undue delay.

The parties have preserved their objections by way of their formal submissions and their statements on the record at the formal instruction conference, where the Court explicitly referenced the subject matter of each instruction at issue, which is sufficient for cross-reference purposes in the appellate record. And the Court's final instructions are of course part of the record. Defendant's request that the Court file its preliminary draft of the jury instructions is denied. *See* Fed. R. Civ. P. 51(b) (requiring the Court to "inform" the parties of its proposed instructions and the proposed action on the parties' requests before instructing the jury and allow the parties an opportunity to object).

[6] *Hill v. McHenry*, 211 F. Supp. 2d 1267, 284 (D. Kan. 2002) (finding employee was not acting within the course and scope of his employment on summary judgment); *Bacon v. Allen*, No. 06-1222-WEB, 2008 WL 4642330, at *8 (D. Kan. Oct. 17, 2008) (finding police officer did not act under color of state law on summary judgment); *Lindsey v. Miami Cnty. Nat'l Bank*, 984 P.2d 719, (Kan. 1999) (denying a pretrial motion to amend the petition to include a claim for punitive damages because the factual scenario did not meet either of the bases set forth in K.S.A. § 60-3702(d)); *see Werdann v. Mel Hambleton Ford, Inc.*, 79 P.3d 1081, 1087 (Kan. Ct. App. 2003) (reviewing trial court's bench trial finding that agent acted with malice toward plaintiff and principal ratified the conduct).

4

presented in the form of a post-judgment motion under Fed. R. Civ. P. 50(b), as they argue that the evidence was insufficient to support the jury's verdict. While Rule 50(b) does not prohibit a renewed motion for judgment as a matter of law prior to the entry of judgment, it does provide a time limit for filing such a motion that is triggered by entry of the judgment. Although defendant's motion is certainly timely,[7] it is premature since judgment has not yet been entered.[8] Therefore, the Court will consider defendant's motion for judgment as a matter of law to be timely filed as of the date of the entry of judgment and the response and reply deadlines shall be tied to that date.

Second, even if the Court had a duty to make an independent finding under K.S.A. § 60-3702(d) at this stage of the proceeding, the Court would find that there was sufficient evidence of authorization and ratification presented at trial. First, the Court notes that defendant conflates the standards that apply to liability for plaintiff's battery claim against MiraCorp and the standards that apply to impose punitive damages against MiraCorp as Goebel's employer. There is no question that the fact of liability was properly before the jury and the Court declines to review the jury's verdict outside the context of a post-judgment motion under Fed. R. Civ. P. 50(b). As described above, the Court will address that motion after the judgment is entered and the motion is fully briefed. The only question that is arguably before this Court is whether there was sufficient evidence of authorization or ratification to impose punitive damages under the statute.

The Kansas Supreme Court has explained that "[a]uthorization is generally accomplished

---

[7] *See* Fed. R. Civ. P. 50 advisory committee's note.

[8] *See McCroy ex rel. McCroy v. Coastal Mart, Inc.*, 207 F. Supp. 2d 1265, 1268-70 (D. Kan.. 2002).

5

before or during the employee's questioned conduct and may be based on an express grant of authority or on a course of conduct implying authority. Ratification is more likely accomplished during or after the questioned conduct and may be express or implied."[9] Defendant urges that there must be evidence that MiraCorp specifically authorized Goebel to commit battery in order for plaintiff to recover punitive damages.[10] But this is not the standard. The standard is whether someone with the power to authorize or ratify on behalf of the principal knew of Goebel's improper actions and condoned them.[11] And there is no requirement that authorization or ratification be express; it may be implied.[12]

There was clear and convincing evidence presented at trial that Goebel's battery was authorized by MiraCorp. Primarily, there was substantial evidence at trial that Goebel himself had the authority to authorize his own conduct based on his position as CEO and part-owner of MiraCorp, a small company for which one-third of the employees are family members of Goebel. There was testimony from multiple witnesses that Goebel directed the employees' actions at MiraCorp and that no other employee at the company believed they could question or discipline him for his conduct toward the MiraCorp employees. To be sure, there was substantial evidence that employees were intimidated by Goebel and that he had a propensity to yell at employees when they did not perform according to his expectations or direction. Sheryl Benter, Kara Ratzlaff, and Amy Walls all testified to this intimidation. Casey Matthiesen,

---

[9] *Lindsey*, 984 P.2d at 724.

[10] Battery is defined under Kansas law as "the unprivileged touching or striking of one person by another done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." *Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007) (quoting PIK Civ. 3d § 127.02).

[11] *See Lindsey*, 984 P.2d at 724.

[12] *See* K.S.A. § 60-3702(d); *Lindsey*, 984 P.2d at 724; *Werdann*, 79 P.3d at 1091.

6

Goebel's ex-son-in-law and a former sales representative for MiraCorp, also testified about Goebel's intimidating behavior and testified that Goebel made all of the "major decisions" at MiraCorp.

Contrary to defendant's characterization, plaintiff does not simply argue that MiraCorp is subject to punitive damages for a battery by any management-level employee. Plaintiff instead argues that MiraCorp is subject to punitive damages based on Goebel's role as owner of the company, and importantly, as MiraCorp's primary decision maker. There was substantial evidence that Goebel insisted that employees attend events at a nearby bar and grill, Wallaby's, after business hours and that he would inappropriately touch female employees and make inappropriate sexual comments at these events. There was evidence that Goebel required employees to attend these functions and would threaten employees that they may lose their jobs if they did not attend. Plaintiff testified that Goebel would not allow her boyfriend to attend these events and when he did, Goebel was hostile toward him. And there was evidence that at least one of the sexual encounters between plaintiff and Goebel began at a Wallaby's event.[13] This evidence supports plaintiff's claim that Goebel authorized his own conduct in his capacity as owner and CEO of MiraCorp when he committed battery against plaintiff.

Moreover, there was no evidence that MiraCorp had a policy in place that prohibited the course of conduct that Goebel repeatedly pursued against plaintiff and at least one other female employee at MiraCorp. For example, there was no evidence that Goebel was subject to any training regarding sexual harassment or inappropriate behavior towards employees that he

---

[13] The first encounter plaintiff testified to involved Goebel, herself, and another employee, Barb Smith. Plaintiff testified that they planned the encounter at Wallaby's, and plaintiff rode with Smith to Smith's home where Goebel met them. The third encounter that plaintiff testified to occurred in March 2008. Plaintiff testified that Goebel invited her and Ratzlaff at a Wallaby's event to his fifth-wheel trailer, parked near Wallaby's.

disregarded.[14] Instead, the evidence at trial was overwhelming that Goebel answered to no one other than himself at MiraCorp; therefore, he would have authorized his own behavior. The jury found that Goebel acted within the course and scope of his employment and there was sufficient evidence, when viewed in the light most favorable to plaintiff, upon which the jury could find Goebel himself impliedly authorized the behavior.

There was also clear and convincing evidence of ratification. There was evidence that both Shane Goebel, Lane Goebel's nephew and Vice President of MiraCorp, and Casey Matthiesen were aware of Goebel's behavior and condoned it. Mathiessen testified that he saw Goebel touch female employees at Wallaby's, including on their legs. Mathiessen also recalled hearing Goebel speak to female employees in a derogatory manner and discussing "flashing" with female employees. Mathiessen testified that he discussed concerns he had about this behavior with his then-wife Jill Goebel and testified that Jill Goebel was upset by her father's behavior, specifically his behavior toward plaintiff and Ratzlaff.

Ratzlaff testified that she discussed with Shane Goebel an incident at Wallaby's where Goebel propositioned her for sex and Shane responded by encouraging Ratzlaff not to quit and that "Lane is just like that." Ratzlaff also testified about a conversation with Lane Goebel at Wallaby's that Shane was present for, where Lane Goebel told Ratzlaff that she needed a "sugardaddy" to secure her job at MiraCorp. Moreover, plaintiff testified that Shane Goebel knew about the sexual encounters between Lane Goebel and plaintiff. She testified that he told her he did not want to "be a part of it" and to leave his name out of it. Finally, Shane Goebel testified that after plaintiff's and Ratzlaff's terminations, he searched all of their email folders.

---

[14]*See Lindsey*, 984 P.2d at 724 (pointing to evidence of the employee's failure to follow employer's policies and procedures as indicative that the employee did not have unlimited authority to act).

There was no evidence, despite the accusations made by Ratzlaff and plaintiff, that Shane Goebel took any actions to disclaim or discipline Lane Goebel for the accused-of conduct.[15] The Court finds that this constitutes clear and convincing evidence of ratification.

### 2. Amount of Punitive Damages

In determining the amount of punitive damages, the Court is to examine the factors set forth in K.S.A. § 60-3702(b):

> (1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;
> (2) the degree of the defendant's awareness of that likelihood;
> (3) the profitability of the defendant's misconduct;
> (4) the duration of the misconduct and any intentional concealment of it;
> (5) the attitude and conduct of the defendant upon discovery of the misconduct;
> (6) the financial condition of the defendant; and
> (7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.

The Court, in considering these factors, makes the following findings of fact and conclusions of law in reaching its decision on the appropriate amount of punitive damages to assess against MiraCorp. The Court recognizes that its discretion is limited to the amount of punitive damages only, as the jury has determined that the battery was willful, wanton, or malicious.

The Court finds that the statutory factors weigh in favor of a large punitive damages award in this case, in the amount of $2,014,000. There was strong evidence regarding the

---

[15]*Werdann*, 79 P.3d at 1091 ("Failure to discipline an employee for wrongful conduct can be considered as evidence of ratification by the employer.").

9

likelihood that serious harm would result from defendant's conduct, and regarding MiraCorp's awareness of that likelihood. The evidence showed that Goebel recruited women to work for him at MiraCorp who had very little, if any, experience in sales, and little or no college education; he paid them well above the hourly range of wages they earned in previous jobs. In fact, typically the sales position started at an hourly rate of $20,[16] and in a year's time moved into a commission-based pay that ranged from over $40,000 to over $100,000 per year. The evidence also showed that these women were highly dependent on their income from MiraCorp. Both Ratzlaff and plaintiff had small children to support and testified about their financial struggles. They both testified that Goebel was aware of these struggles and used this knowledge to coerce them into participating in unwanted sexual encounters, upon which he conditioned their continued employment.

Plaintiff further testified about a conversation she had with Goebel shortly before her termination when he called her into his office and asked her if she knew why he had not been coming into the office as frequently. Plaintiff told him that she believed he thought he was about to "get caught." Goebel responded to her that he "never gets caught" and told plaintiff that he was falling in love with her and that he would take care of her with money and a job. Plaintiff testified that this was the final straw that caused her to contact a lawyer. The evidence showed that MiraCorp's conduct in authorizing and ratifying Goebel's repeated battery involved a reckless indifference to the impact on plaintiff's financial well-being, as well as the physical and emotional toll she testified this conduct caused her. The evidence further showed that Goebel, in his capacity as the owner of MiraCorp and primary decision maker, was well-aware of the

---

[16]Kara Ratzlaff testified that her starting hourly rate in a research position was $15 per hour and that she received a $1 per hour raise after only one week on the job.

serious harm that would result from discovery of his misconduct.

The Court further finds that the duration of the misconduct justifies a sizable punitive damages award. Plaintiff testified that, in addition to other forms of inappropriate touching, Goebel coerced her into multiple unwanted sexual encounters during her employment over a period of months. This was not an isolated occurrence, but a pattern of behavior that was authorized or ratified by MiraCorp.

The Court finds that the attitude of defendant upon discovering the misconduct also warrants a sizeable punitive damages award. When Goebel learned that plaintiff was filing a claim against him for sexual harassment, he reacted by terminating her employment—carrying out the very threat that she testified had coerced her into participating in these sexual encounters in the first place. It was clear from the testimony of Lane Goebel, Shane Goebel, and plaintiff, as well as the recording of the termination, that plaintiff was terminated because Goebel had learned that she was going to file a sexual harassment lawsuit against him. Lane Goebel testified that Shelly Rhodes told him about Ratzlaff's and plaintiff's plans to file sexual harassment suits against him and testified that he could not have someone working for him who was "upset." This reaction by MiraCorp to the misconduct suggests that it was complicit in Goebel's behavior and that it did not take seriously the charges made against Goebel by either Ratzlaff or plaintiff.

This evidence also suggests that a larger punitive damages award is warranted in order to punish MiraCorp's past conduct and deter future misconduct. There is no evidence to suggest that a smaller sum would achieve either punishment or a deterrent effect. This is a small, family-run company and Lane Goebel is the primary decision-maker. The evidence suggests that Goebel, in his role as the owner and CEO of MiraCorp, observes no boundaries with regard to

11

his relationships with female employees. The evidence about his pattern of conduct, conditioned on these employees' job security, suggests that only a large punitive damages award will suffice to send a message that such behavior is unacceptable and contrary to law.

There was some evidence about the profitability of MiraCorp's conduct. Plaintiff presented evidence that she achieved solid sales figures for MiraCorp in her capacity as a sales associate, by exceeding her sales goals from December 2007 through July 2008. She did not earn a commission on these sales, only earning her hourly rate; yet, plaintiff testified that Goebel constantly threatened to terminate plaintiff during the course of her employment if she did not subject herself to sexual encounters with Goebel.

Finally, there was ample evidence presented at the punitive damages hearing about the financial condition of the defendant. The profit and loss statements attached to MiraCorp's tax returns for the years 2003 through 2007 reflect a company that has grown each year in terms of total gross income. In 2008, defendant's total gross income was approximately $3 million; in 2007, it was approximately $2,446,000; and in 2006, it was approximately $2,014,000. Based on these figures, the Court's punitive damages award should sufficiently punish defendant's conduct and deter future misconduct. At the same time, it appears that defendant is in a financial position to absorb the punitive damages award imposed by the Court.

Plaintiff requests a punitive damages award in the amount of the total gross income for MiraCorp in 2006, or approximately $2,014,000. The Court has conducted a de novo review of the evidence in considering all of the factors set forth in K.S.A. § 60-3702(b), and finds that this is an appropriate punitive damages award.[17]

---

[17] In addition, this amount is well within the applicable statutory cap set forth in § 60-3702(e)(1), as it imposes damages in the amount of defendant's gross annual income earned in 2006, within five years of the conduct at issue.

B.   *Compensatory Damages Caps*

Defendant has filed a Motion for Judgment as a Matter of Law Notwithstanding the Verdict (Doc. 160), asking that certain statutory caps be applied to the jury's compensatory damages award. Defendant also asks the Court to reduce the amount of back pay awarded by the jury, arguing that the evidence did not support its award. On this last point, the Court denies defendant's motion without prejudice. Defendant's argument is based on the sufficiency of the evidence and should be presented in the form of a renewed motion for judgment as a matter of law pursuant to Rule 50(b).

Plaintiff did not object to the request to impose the statutory caps at the punitive damages hearing, and the Court agrees that these caps should be imposed to reduce the jury's compensatory damages award. The Kansas Act Against Discrimination imposes a cap of $2000 for pain and suffering damages.[18] Therefore, the jury's compensatory damages award on the KAAD claim must be reduced from $355,000 to $2000. Furthermore, in any action for personal injury, "the total amount recoverable by each party from all defendants for all claims for noneconomic loss shall not exceed a sum total of $250,000."[19] The cap applies to all actions based on personal injury, not just negligence actions.[20] Therefore, the compensatory damages assessed against defendants MiraCorp and Goebel must be reduced from $500,000 each to $250,000 total.

**IT IS THEREFORE ORDERED BY THE COURT** that punitive damages are imposed against defendant MiraCorp in the amount of $2,014,000.

---

[18] K.S.A. § 44-1005(k).

[19] K.S.A. § 60-19a02(b).

[20] *Cott v. Peppermint Twist Mgmt. Co.,* 856 P.2d 906, 933–34 (Kan. 1993).

**IT IS FURTHER ORDERED** that defendant's Motion for Judgment as a Matter of Law Notwithstanding the Verdict (Doc. 160) is granted in part and denied in part. The motion is denied without prejudice to the extent it argues that the jury's back pay award was not based on sufficient evidence. The motion is granted to the extent it asks the Court to impose the statutory caps on the jury's compensatory damages awards.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment on the verdicts, as modified by this Memorandum and Order as follows: compensatory damages against defendant MiraCorp on the KAAD claim shall be entered in the amount of $2000; compensatory damages against defendants MiraCorp and Goebel shall be entered in the total amount of $250,000; punitive damages shall be assessed against defendant MiraCorp in the amount of $2,014,000.

**IT IS SO ORDERED.**

Dated: April 29, 2011

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE