ams

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| AMY WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | **Case No. 09-2112-JAR** |
| | ) | |
| MIRACORP, INC. d/b/a/ NATIONAL | ) | |
| TRUCK AND TRAILER SERVICES, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Before the Court are defendants' Motion for Judgment as a Matter of Law and in the Alternative for New Trial (Doc. 166)[1] and Motion for Attorneys' Fees and Costs (Doc. 165). The motions are fully briefed and the Court is prepared to rule.  As explained more fully below, defendants' motions are denied.

**I.      Background**

Plaintiff filed this action alleging discrimination and retaliation on the basis of sex under Title VII of the Civil Rights Act and the Kansas Act Against Discrimination ("KAAD") against defendant MiraCorp, Inc. ("MiraCorp"), as well as state law claims of battery against MiraCorp and defendant Lane Goebel.  On January 4, 2011, this Court denied defendants' motion for summary judgment, which was based entirely on the argument that MiraCorp did not meet the statutory definition of "employer" under Title VII.[2]  In responding to the motion, plaintiff argued

---

[1]Defendants incorporate their prejudgment motion for judgment as a matter of law (Doc. 158).

[2]*See* 42 U.S.C. § 2000e(b).

that more than fifteen employees were on MiraCorp's payroll during the relevant timeframe, creating a genuine issue of material fact about whether MiraCorp was an "employer."  The Court did not consider defendants' reply, as it had been stricken, and denied summary judgment on the basis that a genuine issue of material fact existed about whether MiraCorp employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the relevant timeframe.

The case proceeded to trial on March 1, 2011, and the jury found in favor of defendant MiraCorp on the Title VII claims and in favor of plaintiff Amy Walls on all state law claims against MiraCorp and Lane Goebel.  In finding that defendant was not liable under Title VII, the jury answered "no" to the following special interrogatory: "Did Plaintiff Amy Walls prove, by a preponderance of the evidence, that MiraCorp employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 2008?"

Plaintiff sought compensatory damages against both defendants and punitive damages against MiraCorp only.[3]  The jury awarded plaintiff $132,000 in back wages on the KAAD claims, and $355,000 in compensatory damages on the KAAD claims.

Pursuant to K.S.A. § 60-3702(a), the jury was asked in a special interrogatory whether punitive damages should be allowed on plaintiff's battery claim against MiraCorp.  The jury was instructed that it may find that punitive damages are allowed if it finds that plaintiff is entitled to actual damages on the battery claim against MiraCorp.  The jury was further instructed that an award of punitive damages is allowable if plaintiff proves by clear and convincing evidence that MiraCorp acted in a willful, wanton, or malicious manner in regard to the battery claim.  The

---

[3]On the first day of trial, defendant objected to any request for punitive damages asserted by plaintiff, arguing that this prayer for relief was not preserved in the Pretrial Order.  The Court agreed, with the exception of the battery claim against MiraCorp.  The Pretrial Order does assert a claim for punitive damages on this claim against MiraCorp only.  (Doc. 65 at 12 ¶ f.3.)

jury found both defendants liable on the battery claims, assessed each defendant $500,000 in compensatory damages, and found that defendant MiraCorp should be assessed punitive damages.[4]

The Court deferred entry of judgment in this matter pending a hearing on the appropriate amount of punitive damages, which was held on April 14, 2011. After duly considering the evidence presented at the hearing, the Court issued a Memorandum and Order awarding plaintiff $2,014,000 in punitive damages and applying the statutory caps to the jury's compensatory damages awards. The Amended Judgment was entered on April 29, 2011 in the amount of $132,000 in back wages, $2000 in compensatory damages on the KAAD claim, $250,000 in compensatory damages against both defendants on the battery claim, and $2,014,000 in punitive damages against defendant MiraCorp.

Defendant has filed a Motion for Judgment as a Matter of Law and, in the Alternative, for New Trial, which asserts the following arguments: (1) insufficient evidence on plaintiff's claims of battery, sexual harassment, lost wages, and punitive damages; (2) erroneous evidentiary rulings; and (3) erroneous jury instructions.

## II.    Standards

### A.    *Renewed Motion for Judgment as a Matter of Law*

Defendants renew their motion for judgment as a matter of law under Rule 50(b) with regard to all claims for which the jury found liability. "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable

---

[4](Doc. 155.)

inferences which may support the opposing party's position."[5]  The Court must consider the evidence admitted at trial, construing it and the inferences from it in the light most favorable to the non-moving party.[6]  The Court may not make credibility determinations or weigh the evidence.[7]  The Court may not substitute its judgment for that of the jury.[8]

### B.      Motion for New Trial

In the alternative, defendants move for a new trial under Fed. R. Civ. P. 59(a).  Their motion argues that a new trial is warranted because (1) the verdicts were against the weight of the evidence; (2) the Court erred in several of its evidentiary rulings; (3) the Court erred in declining to give two of defendants' proposed  jury instructions; and (4) the verdict was based on bias and prejudice.  Motions for new trial are committed to the sound discretion of the trial court.[9]  "A new trial cannot be granted unless the error was prejudicial and affects the party's substantial rights."[10]  Motions for new trial are "not regarded with favor and should only be granted with great caution."[11]

"If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the

---

[5]*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000).

[6]*Id.*

[7]*Id.*

[8]*Rocky Mountain Christian Church v. Bd. of Cnty. Commr's*, 613 F.3d 1229, 1235 (10th Cir. 2010).

[9]*See, e.g.*, *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 (10th Cir. 1997).

[10]*Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1216–17 (10th Cir. 2008) (citing Fed. R. Civ. P. 61).

[11]*Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992) (citation omitted).

evidence."[12]  The court should consider the evidence "in the light most favorable to the prevailing party, bearing in mind that '[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'"[13]

## III.  Discussion

### A.  *Sufficiency of the Evidence*

### 1.  Battery

Under Kansas law, battery is defined as "'the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive.'"[14] Defendants argue that the evidence at trial was insufficient to find liablity on the battery claims because (1) there was no evidence of non-consensual sex; (2) there was no evidence that Goebel was aware that the sexual contact was offensive; and (3) there was insufficient evidence to establish that Goebel was acting within the course and scope of his employment when he committed the battery.

### a.  Consent

Defendants argue that the evidence at trial was insufficient to show that the touching in this case was unprivileged.  According to defendants, the evidence showed that plaintiff did not

---

[12]*See, e.g.*, *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762–63 (10th Cir. 2009) (quotation omitted); *Snyder v. City of Moab*, 354 F.3d 1179, 1187–88 (10th Cir. 2003) (quotation omitted).

[13]*Snyder*, 354 F.3d at 1187–88 (quoting *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir.2000)) (citation omitted); *see also Ellsworth v. Tuttle,* 148 F. App'x 653, 669-70 (10th Cir. 2005); *Acker v. Burlington N. & Santa Fe Ry.*, 388 F. Supp. 2d 1299, 1301 (D. Kan. 2005).

[14]*Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007) (quoting PIK Civ. 3d 127.02).

advise Goebel that his advances were unwelcome and Goebel did not know that his actions were considered offensive until he learned from one of plaintiff's co-workers that she planned to file a sexual harassment complaint.  Defendants contend that the evidence showed that Walls voluntarily accompanied Goebel to various locations where the three sexual encounters with Goebel took place and did not express any opposition to the contact.  Defendants contend that this failure to object or reject Goebel's advances is fatal to her battery claim.  Defendants further point to the evidence at trial that plaintiff engaged in sexually aggressive behavior with other MiraCorp employees.

Neither party addresses the scope of the requirement that a battery claim is "unprivileged," outside the context of an unconsented surgery.[15]  But "an individual may waive any right to complain of the conduct underlying a battery by consenting to that conduct.  Any such consent, however, must be made knowingly and voluntarily."[16]

There was sufficient evidence presented at trial upon which a reasonable jury could conclude that plaintiff did not consent to Goebel's advances.  Plaintiff testified that her continued employment was conditioned upon engaging in these sexual encounters with Goebel and that she felt coerced and pressured.  There was evidence at trial that Goebel told plaintiff that her job was not secure unless she participated in drinking events at a nearby bar, Wallabys, after business hours.  Goebel discussed sex with plaintiff and told her that if he could develop trust with her, her job would be secure.  After each of the three sexual encounters, Goebel told plaintiff that he trusted her and that her job was secure.  When plaintiff began to resist Goebel's

---

[15]*See, e.g.*, *Hernandez v. United States*, 465 F. Supp. 1071, 1073–74 (D. Kan. 1979) (explaining the difference between a patient's cause of action for battery and negligence).

[16]*Lesser v. Neosho Cnty. Comm'y Coll.*, 741 F. Supp. 854, 865 (D. Kan. 1990).

advances, he made it clear that he would terminate her employment if she did not continue.  A reasonable jury could infer that plaintiff did not voluntarily consent to Goebel's sexual advances because she understood that she would be terminated if she did not participate.  Plaintiff testified that Goebel's advances were offensive and unwelcome.

The Court notes that Goebel did not testify in person and testified during his video-taped deposition that the sexual encounters alleged by plaintiff did not occur.  Therefore, there is of course no direct evidence about whether Goebel understood his sexual advances to be welcome.  However, viewing the evidence in the light most favorable to plaintiff, the jury could have reasonably inferred that Goebel was aware that requiring an employee to engage in sexual acts as a precondition to continued employment would be unwelcome.

The Court may not consider plaintiff's "sexually aggressive" conduct in determining her credibility.  The Court does not weigh the evidence or determine credibility when deciding whether the evidence is sufficient under Rule 50(b), nor whether the verdict was against the weight of the evidence under Rule 59.  The Court finds that under the applicable standards, there was sufficient evidence that Goebel's touching of plaintiff was unprivileged.

**b.    Intent**

Goebel may be held liable for battery "if plaintiff's injuries were the 'natural and probable consequence of the defendant's intended actions.'"[17]  Defendants argue that instead of intending harm, the evidence showed that Goebel expressed his love for plaintiff.  But the jury could have reasonably inferred from the evidence that Goebel's sexual contact, premised upon plaintiff's continued employment, would bring about contact that was harmful or offensive.  It

---

[17]*Baska*, 156 P.3d at 622 (quoting *Harris v. Richards*, 867 P.2d 325 (1994)).

was reasonable for the jury to infer from the evidence that plaintiff's harm, which included loss of sleep and loss of weight, was the natural and probable consequence of defendant's intended actions—sexual favors that were a condition precedent to plaintiff's continued employment. There was sufficient evidence upon which the jury could reasonably infer that the natural and probable consequences of Goebel's intended actions would be offensive.

Defendants also argue that plaintiff cannot establish harm because she did not convey the offensive nature of the contact to Goebel, citing *Holdren v. General Motors Corp.*[18]  There, the court considered the fact that plaintiff did not indicate that the contact was offensive in the context of determining whether the plaintiff was tortiously injured, a separate inquiry.[19]  The court explained that the contact "'must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity.'"[20]  In *Holdren*, the contact at issue was a tap or touch on the back with a rolled-up paper during the course of a casual greeting.  The court determined that the plaintiff's subjective view that the casual contact was offensive was not sufficient under those circumstances given that he did not tell the defendant it was offensive.[21]  But the facts of this case are different because the contact at issue could not be described as casual.  Furthermore, viewed in the evidence most favorable to plaintiff, the evidence showed that Goebel communicated to plaintiff that if she did not continue to have sex with him, he would terminate her employment.  Under these circumstances, the fact that plaintiff acquiesced

---

[18]31 F. Supp. 2d 1279, 1287 (D. Kan. 1998).

[19]*Id.*

[20]*Id.* (citing Restatement (Second) of Torts § 19 (1965)).

[21]*Id.*

does not invalidate the jury's determination that his touching was intended to cause contact that is offensive or harmful.

### c. Vicarious Liability

Next, defendants argue that there was insufficient evidence upon which the jury could determine that MiraCorp was liable for Goebel's battery.  Under Kansas law,

> An employee is acting within the scope of his authority when he is performing services for which he has been employed, or when he is doing anything which is reasonably incidental to his employment. The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it.[22]

Defendants argue that there was no evidence that MiraCorp granted Goebel the authority to commit sexual battery, nor did it authorize Goebel's conduct.  Defendants argue that sexual intercourse cannot be considered a natural or legitimate sequence to MiraCorp's business; therefore, it was outside the course and scope of his employment and MiraCorp may not be found liable.  Viewing the evidence in the light most favorable to plaintiff without weighing the credibility of the witnesses, the jury could have reasonably concluded that Goebel's battery was authorized by MiraCorp.  There was evidence at trial that Goebel himself had the authority to authorize his own conduct based on his position as CEO and part-owner of MiraCorp, a small company for which one-third of the employees are Goebel's family members.  There was testimony from multiple witnesses that Goebel directed the employees' actions at MiraCorp and that no other employee at the company believed they could question or discipline him for his conduct toward the MiraCorp employees.  There was also evidence that employees were

---

[22]*Williams v. Comm'y Drive-in Theater, Inc.*, 520 P.2d 1296, 1300 (Kan. 1974).

intimidated by Goebel and that he had a propensity to yell at employees when they did not perform according to his expectations or direction.  Sheryl Bentner, Kara Ratzlaff, and Amy Walls all testified to this intimidation.  Casey Matthiesen, Goebel's ex-son-in-law and a former sales representative for MiraCorp, also testified about Goebel's intimidating behavior and testified that Goebel made all of the "major decisions" at MiraCorp.

MiraCorp may be held liable for Goebel's battery if it was committed while he was "acting in the execution of his or her authority and within the course of his or her employment, or with a view to the furtherance of the employer's business, and not for a purpose personal to the employee."[23]  This is generally a question of fact.[24]  A reasonable jury could conclude from the evidence presented at trial that Goebel's battery was committed in furtherance of his business, as he conditioned plaintiff's continued employment on having sexual intercourse with him.  Also, one of the sexual encounters testified to took place inside a parked fifth wheel trailer, MiraCorp's property. Therefore, the jury could infer from the evidence that the battery was not purely personal to Goebel, but in furtherance of MiraCorp's business.

## 2.    Sexual Harassment Claim

Federal cases construing Title VII of the Civil Rights Act of 1964 have been used as persuasive authority by the Kansas courts in interpreting and applying the KAAD.[25]  Defendants argue that plaintiff did not submit sufficient evidence at trial to support her sexual harassment

---

[23]*Wayman v. Accor N.A., Inc.*, 251 P.3d 640, 345 (Kan. Ct. App. 2011).

[24]*Id.*

[25]*See, e.g.*, *Labra v. Mid-Plains Constr., Inc.*, 90 P.3d 954, 957 (Kan. Ct. App. 2004); *see also Best v. State Farm Mutual Auto. Ins. Co.*, 953 F.2d 1477, 1480 n.2 (10th Cir. 1991); *Cubie v. Bryan Career Coll., Inc.*, 244 F. supp. 2d 1191, 1200 (D. Kan. 2003).

hostile work environment claim on two grounds: (1) plaintiff failed to establish that the conduct

was "unwelcome," and (2) plaintiff failed to show that the conduct was "sufficiently severe or

pervasive" to create an abusive work environment.

To determine whether the conduct was unwelcome, the Kansas Court of Appeals has

explained:

> In determining whether the behavior in question is
> unwelcome for purposes of a sexual harassment claim, the
> question is whether under the totality of the circumstances plaintiff
> indicated by her conduct that the alleged harassment was
> unwelcome.  Moreover, the conduct must be unwelcome in the
> sense that the employee did not solicit or incite it, and in the sense
> that the employee regarded the conduct as undesirable or
> offensive.  The question whether particular conduct was indeed
> unwelcome generally presents difficult problems of proof and
> turns largely on credibility determinations committed to the trier of
> fact.  Moreover, engaging in or responding to sexual banter does
> not necessarily waive a plaintiff's legal protections against
> unwelcome harassment.[26]

There was evidence at trial upon which the jury could reasonably conclude that Goebel's

conduct toward plaintiff was unwelcome.  Plaintiff testified that Goebel's conduct toward her

was unwelcome and that she only acquiesced to his sexual advances because she understood she

would be terminated if she did not.  The evidence also showed that she spoke to Shane Goebel

about Lane Goebel's sexual advances and Shane Goebel told her to "leave his name out of it."

The jury was entitled to find this testimony credible.

Plaintiff was required to establish that the hostile work environment was sufficiently

severe and persuasive, which required her to show that it was:

> both objectively and subjectively offensive, one that a reasonable

---

[26]*Labra*, 90 P.3d at 958–59 (quotations and citations omitted).

> person would find hostile or abusive, and one that the victim in
> fact did perceive to be so. Whether an environment is sufficiently
> hostile or abusive must be determined by looking at all the
> circumstances, including frequency of discriminatory conduct, its
> severity, whether it is physically threatening or humiliating or a
> mere offensive utterance, and whether it unreasonably interferes
> with an employee's work performance.[27]

Defendant argues that plaintiff failed to present objective evidence that Goebel's conduct was severe or pervasive, arguing that she must have presented corroborating evidence that plaintiff viewed the conduct as offensive. But the jury was entitled to determine from the evidence that the conduct at issue—conditioning plaintiff's continued employment on multiple sexual favors that involved sexual acts with her employer and third parties—was objectively severe and pervasive based on the frequency of the conduct (three incidents and countless phone calls), the fact that it was physically offensive and not an simply utterance, and the fact that it interfered with plaintiff's job performance. There was evidence presented at trial that plaintiff's work performance diminished over the course of her employment, that plaintiff suffered mood swings, that Goebel intimidated and threatened plaintiff and others in the workplace, that plaintiff was uncomfortable whenever Goebel was present at the office, and that Goebel conditioned her employment on sexual favors. All of this evidence could lead a jury to infer that a reasonable person would find the work environment hostile and abusive.

Because the jury's verdict on the sexual harassment claim is based on sufficient evidence, when viewed in the light most favorable to plaintiff, judgment as a matter of law is not appropriate. Moreover, defendants have not established that the jury's verdict on this claim is clearly, decidedly, or overwhelmingly against the weight of the evidence. Accordingly,

---

[27]*Id.* at 960.

12

defendants' motion is denied on this basis.

### 3. Lost Wages

Next, defendants complain that the jury's lost wages award of $132,000 is contrary to the evidence and should be remitted as a matter of law to an amount no greater than $108,000. According to defendants, the jury could only award plaintiff an amount based on her pre-termination salary of $20 per hour for 135 weeks, the time between her termination on August 7, 2008 and the jury's verdict on March 8, 2011. Defendants' argument would require this Court to apply an incorrect standard. When viewing the evidence in the light most favorable to plaintiff, the jury could have reasonably concluded that plaintiff would have moved from her $20 hourly wage to a $9 hourly wage, plus commissions, had she continued her employment. Plaintiff testified that this change, which she expected would happen at her one-year mark, would have resulted in a greater salary than the straight $20 hourly wage. Linda Goebel also testified that MiraCorp was planning to move plaintiff to a commission-based salary in August 2008. The jury also heard evidence that plaintiff's commission would have been over $3300 in both December 2007 and January 2008 if she was earning commissions instead of the straight hourly wage. Given this evidence, it was not contrary to the evidence to award plaintiff backpay in excess of $108,000 and the Court will not disturb the jury's verdict.

### 4. Punitive Damages

Finally, defendants argue that the evidence was insufficient for the Court to award punitive damages against MiraCorp for battery. The Kansas punitive damages statute, K.S.A. § 60-3702(d), provides:

> (d) In no case shall exemplary or punitive damages be assessed
> pursuant to this section against:

13

> (1) A principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer; or
>
> (2) an association, partnership or corporation for the acts of a member, partner or shareholder unless such association, partnership or corporation authorized or ratified the questioned conduct.

The Kansas Supreme Court has explained that "[a]uthorization is generally accomplished before or during the employee's questioned conduct and may be based on an express grant of authority or on a course of conduct implying authority.  Ratification is more likely accomplished during or after the questioned conduct and may be express or implied."[28]  Defendant urges that there must be evidence that MiraCorp specifically authorized Goebel to commit battery in order for plaintiff to recover punitive damages.  But this is not the standard.  The standard is whether someone with the power to authorize or ratify on behalf of the principal knew of Goebel's improper actions and condoned them.[29]  And there is no requirement that authorization or ratification be express; it may be implied.[30]

The court conducted a separate hearing on punitive damages and found that there was clear and convincing evidence presented at trial that MiraCorp either authorized or ratified Goebel's conduct.  The Court based its reasoning on the substantial evidence at trial that Goebel himself had the authority to authorize his own conduct based on his position as CEO and part-owner of MiraCorp, a small company for which one-third of the employees are family members of Goebel.  There was testimony from multiple witnesses that Goebel directed the employees'

---

[28]*Lindsey*, 984 P.2d at 724.

[29]*See Lindsey*, 984 P.2d at 724.

[30]*See* K.S.A. § 60-3702(d); *Lindsey*, 984 P.2d at 724; *Werdann*, 79 P.3d at 1091.

14

actions at MiraCorp and that no other employee at the company believed they could question or discipline him for his conduct toward the MiraCorp employees. The Court considered evidence that employees were intimidated by Goebel and that he had a propensity to yell at employees when they did not perform according to his expectations or direction. Casey Matthiesen, Goebel's ex-son-in-law and a former sales representative for MiraCorp, also testified about Goebel's intimidating behavior and testified that Goebel made all of the "major decisions" at MiraCorp.

The Court also considered evidence that Goebel insisted that employees attend events at a nearby bar and grill, Wallaby's, after business hours and that he would inappropriately touch female employees and make inappropriate sexual comments at these events. There was evidence that Goebel required employees to attend these functions and would threaten employees that they may lose their jobs if they did not attend. Plaintiff testified that Goebel would not allow her boyfriend to attend these events and when he did, Goebel was hostile toward him. And there was evidence that at least one of the sexual encounters between plaintiff and Goebel began at a Wallaby's event. This evidence supports plaintiff's claim that Goebel authorized his own conduct in his capacity as owner and CEO of MiraCorp when he committed battery against plaintiff.

Moreover, the Court previously found no evidence that MiraCorp had a policy in place that prohibited the course of conduct that Goebel repeatedly pursued against plaintiff and at least one other female employee at MiraCorp. For example, there was no evidence that Goebel was subject to any training regarding sexual harassment or inappropriate behavior towards employees

that he disregarded.[31]  Instead, the evidence at trial was overwhelming that Goebel answered to

no one other than himself at MiraCorp; therefore, he would have authorized his own behavior.

The jury found that Goebel acted within the course and scope of his employment and there was

sufficient evidence, when viewed in the light most favorable to plaintiff, upon which the Court

based its finding that Goebel himself impliedly authorized the behavior.

The Court further found clear and convincing evidence of ratification.  There was

evidence that both Shane Goebel, Lane Goebel's nephew and Vice President of MiraCorp, and

Casey Mathiesen were aware of Goebel's behavior and condoned it.  Mathiessen testified that he

saw Goebel touch female employees at Wallaby's, including on their legs.  Mathiessen also

recalled hearing Goebel speak to female employees in a derogatory manner and discussing

"flashing" with female employees.  Mathiessen testified that he discussed concerns he had about

this behavior with his then-wife Jill Goebel and testified that Jill Goebel was upset by her

father's behavior, specifically his behavior toward plaintiff and Kara Ratzlaff.

Kara Ratzlaff testified that she discussed with Shane Goebel an incident at Wallaby's

where Goebel propositioned her for sex and Shane responded by encouraging Ratzlaff not to quit

and that "Lane is just like that."  Ratzlaff also testified about a conversation with Lane Goebel at

Wallaby's that Shane was present for, where Lane Goebel told Ratzlaff that she needed a

"sugardaddy" to secure her job at MiraCorp.  Moreover, plaintiff testified that Shane Goebel

knew about the sexual encounters between Lane Goebel and plaintiff.  She testified that he told

her he did not want to "be a part of it" and to leave his name out of it.  The Court observed no

evidence, despite the accusations made by Ratzlaff and plaintiff, that Shane Goebel took any

---

[31]*See Lindsey*, 984 P.2d at 724 (pointing to evidence of the employee's failure to follow employer's policies and procedures as indicative that the employee did not have unlimited authority to act).

actions to disclaim or discipline Lane Goebel for the accused-of conduct.[32]

Given this evidence, defendants' motion for judgment as a matter of law and, in the alternative, for new trial based on the sufficiency of the evidence on plaintiff's claim against MiraCorp for punitive damages, is denied.

### B.      *Evidentiary Rulings*

### 1.      **Sheryl Benter's Testimony**

Plaintiff called Sheryl Bentner, a former employee at MiraCorp, as her first witness at trial.  Benter worked at MiraCorp for two and one-half to three years, beginning in late 2000 or early 2001.  Benter testified about the culture at MiraCorp during her employment; specifically, that Goebel engaged in yelling and intimidation, as well as sexual innuendo directed toward employees.  Defendants objected to this testimony, arguing that it was a prior bad act under Fed. R. Evid. 404(b) and should be excluded.  In their motion for new trial, defendants argue that this evidence was used to "paint Lane Goebel in an unfavorable light and accuse him of bad acts and misconduct which were not otherwise actionable under a sexual harassment claim or battery claim."

To the extent defendants' objection is based on Fed. R. Evid. 404(b), it was not in error. Defendants first raised this argument in limine, arguing that it was improper evidence of Goebel's prior bad acts.  Plaintiff maintained that this evidence would be admissible under Rule 406, to show habit.  Under Rule 406, a party may present evidence of a person's habit or an organization's routine practice for the purpose of proving that the person or organization acted in conformity with that habit or routine practice.  A "habit" is "a regular practice of meeting a

---

[32]*Werdann*, 79 P.3d at 1091 ("Failure to discipline an employee for wrongful conduct can be considered as evidence of ratification by the employer.").

particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set of circumstances."[33]  To prove that an act is a habit, the Tenth Circuit requires the proponent of the evidence to "offer evidence of numerous, consistent occurrences of the act."[34]  The Tenth Circuit has observed that "it should go without saying that illegal acts such as embezzlement cannot properly be characterized as semi-automatic or reflexive."[35]

The Court took the motion in limine under advisement based on plaintiff's proffer that multiple witnesses would testify that Goebel's yelling and intimidation in the workplace was common.  Certainly, Benter's testimony about the working environment at MiraCorp, in particular, Goebel's attitude and treatment of female employees, was highly probative with respect to the hostile work environment claim because plaintiff was required to show that the hostile environment was objectively severe and pervasive.  The evidence was also probative of Goebel's intent on the battery claim.  The Court found that such evidence would be probative of the sexual harassment and battery claims.  Defendants objected twice during Benter's testimony and, after the second objection, the Court instructed plaintiff's counsel to move on from this line of questioning in the absence of testimony that would connect Goebel's acts to a sexually hostile workplace.  The Court's ruling was not in error because it was probative, and because plaintiff presented a sufficient proffer that the evidence established Goebel's habit of yelling and intimidation under Fed. R. Evid. 406.  To be sure, Kara Ratzlaff and plaintiff both testified later at trial about Goebel's intimidation in the workplace.

---

[33]*Perrin v. Anderson*, 784 F.2d 1040, 1046 (10th Cir. 1986).

[34]*United States v. Oldbear*, 568 F.3d 814, 822 (10th Cir. 2009).

[35]*Id.*

Moreover the ruling did not affect defendants' substantial rights because Benter's testimony was corroborated by other witnesses; namely, plaintiff and Kara Ratzlaff. The jury could have determined that the verdicts on the sexual harassment and battery claims was warranted based on the egregious nature of the conduct as testified to by plaintiff and Ratzlaff.

### 2.      Evidence of Goebel's Bonus

During plaintiff's direct examination of Linda Goebel, who was responsible for payroll at MiraCorp, counsel elicited testimony that Lane Goebel's annual bonus was $500,000, in the context of establishing the amount of MiraCorp's profits during plaintiff's employment. Defendants contend that this testimony was unduly prejudicial, as shown by the jury's award on the battery claim in the amount of exactly $500,000. But even if this evidence should have been excluded, a new trial would not be warranted unless the error affected defendants' substantial rights.[36] Here, a substantial amount of evidence had already been presented to show sexual harassment and battery. Both Ratzlaff and plaintiff had already testified about the numerous unwelcome sexual encounters with Lane Goebel. And Kevin Lictenhauer, plaintiff's ex-boyfriend, had testified about being intimidated by Lane Goebel and instructed to leave the Wallaby's drinking events. He also recalled plaintiff telling him that Goebel told her she would be fired if she did not attend these events. Sheryl Benter had also testified about the hostile work environment at MiraCorp.

Moreover, any resulting prejudice stemming from this testimony was cured by the Court's instructions to the jury. The Court instructed the jury that: (1) it must follow the law set out in the instructions and apply that law to the facts it finds from the evidence presented at

---

[36]Fed. R. Civ. P. 61.

trial;[37] (2) it must weigh and consider the case without sympathy or bias for or against any party and that it must not be influenced by anything not within the issues of the case;[38] and (3) if it finds in favor of plaintiff, it may only award it a sum that it believes it sustained as a direct result of the conduct.[39]  The jury is presumed to have followed the Court's instructions.[40]  Therefore, the Court is unable to find that the testimony about defendant Goebel's bonus resulted in jury bias and prejudice.  Looking at the record as a whole, the Court cannot find that justice requires a new trial based on the admission of this evidence.

### C.   *Jury Instructions*

In evaluating whether the jury was properly instructed, the Court looks at the jury instructions as a whole and determines whether they "properly stated the applicable law and directed the jury to consider matters within its province."[41]

### 1.   Scope of Employment

Defendants object to the omission of defendants' proposed jury instruction, D20, which pertains to the standard for determining whether Goebel was acting within the course and scope of employment when he committed the battery in this case.  Specifically, defendants requested that the instruction include the following language: "An employee is not acting within the scope of his employment when the employee's acts are for a purpose personal to the employee."[42]  The

---

[37]Doc. 153, Instruction No. 1.

[38]*Id.*, Instruction No. 2.

[39]*Id.*, Instructions Nos. 15, 25, 31.

[40]*See, e.g.*, *CSX Transp., Inc. v. Hensley*, 129 S. Ct. 2139, 2141 (2009).

[41]*Gardetoo v. Mason*, 100 F.3d 803, 816 (10th Cir. 1996).

[42]Doc. 140 at 4.

Court provided Instructions 27, 28, and 29 on the standards for the jury to consider.  Instruction

No. 28 provided:

> One of the questions you must decide is whether or not
> Lane Goebel was acting within the scope of his employment.
>
> An employee is acting within the scope of his employment
> when he is performing services for which he has been employed,
> or when he is doing anything which is reasonably incidental to his
> employment. The test is not necessarily whether the specific
> conduct was expressly authorized or forbidden by the employer
> MiraCorp, but whether such conduct should have been fairly
> foreseen from the nature of the employment and the duties relating
> to it.[43]

This language has been cited with approval by the Kansas Supreme Court.[44]  The Court finds that

the instructions, when read as a whole, properly stated the applicable law.  Defendants were able

to argue, consistent with this instruction, that Goebel's acts were personal and not reasonably

foreseeable from the nature of his employment.[45]

### 2.      KAAD Discrimination

Finally, defendants argue that the Court's instruction on the elements of plaintiff's

KAAD retaliation claim was erroneous.  The Court instructed as follows:

> Plaintiff claims that she was fired in retaliation for
> complaining of being sexually harassed under the KAAD.  In order
> to prevail on her retaliation claim against defendant MiraCorp,
> plaintiff must prove the following by a preponderance of the
> evidence:

---

[43]Doc. 153, Instruction No. 28.

[44]*Williams v. Comm'y Drive-in Theater, Inc.*, 520 P.2d 1296, 1300 (Kan. 1974); *Commerce Bank of St. Joseph, N.A. v. Kansas*, 833 P.2d 996, 999 (10th Cir. 1992); PIK 2d 107.06.

[45]*See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1023 (10th Cir. 2004) (explaining that a party is not entitled to an instruction on every correct proposition of law and, so long as the other instructions provide a sound basis for argument, an additional instruction is not essential).

| | |
|---|---|
| First: | Plaintiff engaged in protected opposition to discrimination under the KAAD; and |
| Second: | Defendant MiraCorp was aware of Plaintiff's protected opposition; and |
| Third: | Plaintiff had a good faith, reasonable belief that the conduct she was reporting was sexual harassment; and |
| Fourth: | Defendant MiraCorp terminated plaintiff after becoming aware of Plaintiff's protected opposition; and |
| Fifth: | Plaintiff's complaint of sexual harassment was a motivating factor in defendant MiraCorp's decision to terminate plaintiff's employment. |

If any of the above elements has not been proved by the preponderance of the evidence, your verdict must be for defendant MiraCorp and you need not proceed further in considering this claim.[46]

Defendant argues that the first and fifth elements as described by the Court's instruction are erroneous.

With regard to the first element, defendants argue that the protected opposition should have been specifically described to the jury because opposition that is not communicated to management does not constitute protected opposition. Defendants argue in their motion that complaining to a friend or attorney is not protected opposition. "'Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII].'"[47] Plaintiff is

---

[46]Doc. 153, Instruction No. 20.

[47]*Faragalla v. Douglas Cnty. Sch. Dist. RE1*, 411 Fed. App'x 140, 148 (10th Cir. 2011) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)).

not required to file a formal complaint in order to engage in protected opposition.[48]  The second element, as set forth in the Instruction 20, makes clear that the defendant must be aware of the protected opposition.[49]  This instruction, when read as a whole with the other instructions, informed the jury that the employer must be aware of plaintiff's protected opposition and that the adverse employment action must be taken after the employer becomes aware of the protected opposition.

Defendants next argue that the elements of a KAAD retaliation claim differ from a Title VII claim.  Specifically, defendants urge that the fifth element is inconsistent with the employment-at-will doctrine in Kansas and that the Court should have instructed the jury that plaintiff can be terminated under the KAAD if the employer has a valid business necessity. Defendants admit that the fifth element is consistent with a Title VII retaliation claim, and the Court notes that Title VII's standards have been consistently applied to claims under the KAAD.[50]  Furthermore, retaliation on the basis of sex does not constitute an exception to the employment-at-will doctrine because a Kansas plaintiff that claims sex discrimination or retaliation has a remedy under Title VII and the KAAD.[51]  Defendants fail to explain or cite any authority as to how the employment-at-will doctrine impacts the elements of a claim of retaliation under the KAAD.

---

[48]*See Dick v. Phone Directories Co.*, 397 F. 3d 1256, 1267 (10th Cir. 2005); *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

[49]*See, e.g.*, *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

[50]*See, e.g.*, *Labra v. Mid-Plains Constr., Inc.*, 90 P.3d 954, 957 (Kan. Ct. App. 2004); *see also Best v. State Farm Mut. Auto. Ins. Co.*, 953 F.2d 1477, 1480 n.2 (10th Cir. 1991); *Cubie v. Bryan Career Coll., Inc.*, 244 F. supp. 2d 1191, 1200 (D. Kan. 2003).

[51]*See Polson v. Davis*, 635 F. Supp. 1130, 1150 (D. Kan. 1986).

Moreover, defendants argue that the Court should have added an element to the KAAD retaliation instruction that plaintiff must prove she was retaliated against "without a valid business necessity."[52]  Defendants are mistaken that this language appears in the relevant statutory subsection.  Under the KAAD, it is unlawful "[f]or any employer, . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any practices or acts forbidden under this act or because such person has filed a complaint, testified or assisted in any proceeding under this act."[53]  The business necessity language only appears in the discrimination subsection.  Moreover, the exclusion of this requirement did not preclude defendants from arguing that plaintiff was terminated for a lawful reason.  Accordingly, the Court's instruction was not in error.

## IV.    Motion for Attorneys' Fees

Defendants have moved for attorneys' fees under Title VII.  The statute provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee (including expert fees) as part of the costs, . . ."[54]  Under this statute, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."[55]  The Court should not apply post hoc reasoning and characterize a plaintiff's claim as frivolous or groundless merely because the claim was not

---

[52]*See* K.S.A. § 44-1009(a)(1).

[53]*Id.* § 44-1009(a)(4).

[54]42 U.S.C. § 2000e-5(k)

[55]*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

ultimately successful.[56]  "Rarely will a case be sufficiently frivolous to justify imposing attorneys' fees on the plaintiff."[57]

There can be no dispute that plaintiff's Title VII claims failed because she could not meet her burden of showing that MiraCorp met the statutory definition of "employer."  However, the Court cannot find that this failure of proof renders plaintiff's claim frivolous or groundless.  Defendants moved for summary judgment on this basis and the motion was denied.  Under 42 U.S.C. § 2000e(b), an "employer" "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  The Court applied the Supreme Court's "payroll rule,"[58] and found there was a genuine issue of material fact as to whether MiraCorp employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 2008.

The evidence presented on summary judgment and at trial showed that this was a close factual question.  The parties stipulated that MiraCorp had fifteen or more employees for nine weeks in 2008 and defendant admitted that three more weeks were not in dispute.  Therefore, the jury was required to determine if MiraCorp employed fifteen or more employees for eight other weeks in 2008.  The payroll records showed that the number of MiraCorp's employees in 2008 hovered around fifteen for the majority of the year.  But these payroll records did not make clear the start and end dates of each employee's employment, making it difficult without extensive

---

[56]*Id.* at 421–22.

[57]*Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (citing *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995)).

[58]*Walters v. Metro. Educ. Enters., Inc.* 519 U.S. 202 (1997).

cross-examination of various witnesses to determine the number of employees for any given week in 2008.  While the jury ultimately found in favor of defendant on this question, the Court is unable to conclude that this verdict shows plaintiff's claim was brought in bad faith or without foundation.  Given the close factual question about MiraCorp's status as a statutory employer, the Court declines to find that plaintiff's claim under Title VII was frivolous, unreasonable, or without foundation.  There is certainly no evidence of bad faith.  This is not one of those rare cases where a prevailing civil rights defendant is entitled to attorneys' fees.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Judgment as a Matter of Law and in the Alternative for New Trial (Doc. 166) is **denied**.

**IT IS FURTHER ORDERED** that defendant MiraCorp's Motion for Attorneys' Fees and Costs (Doc. 165) is **denied**.

Dated: August 18, 2011

 S/ Julie A. Robinson                          
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE